Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISS LAW**
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone: (310) 208-2800
Facsimile: (310) 209-2348

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE LR TRUST, Derivatively on Behalf of INTEL CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>PAT GELSINGER, JAMES J. GOETZ, ANDREA J. GOLDSMITH, ALYSSA H. HENRY, OMAR ISHRAK, TSU-JAE KING LIU, RISA LAVIZZO-MOUREY, BARBARA G. NOVICK, GREGORY D. SMITH, LIP-BU TAN, DION J. WEISLER, FRANK D. YEARY, and DAVID ZINSNER,<br><br>Defendants,<br><br>-and-<br><br>INTEL CORPORATION, a Delaware Corporation,<br><br>Nominal Defendant. | **Case No.**<br><br>**VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

By and through the undersigned counsel, Plaintiff The LR Trust ("Plaintiff") brings this shareholder derivative action on behalf of Intel Corporation ("Intel" or the "Company") against officers and directors of the Company for: (i) violations of the Securities Exchange Act of 1934 (the "Exchange Act"); (ii) breaches of fiduciary duty; (iii) aiding and abetting breach of fiduciary duty; (iv) unjust enrichment; and (iv) waste of corporate assets. Plaintiff makes these allegations upon personal knowledge as to matters concerning itself and, as to all other matters, upon the investigation

of counsel, which includes without limitation: a review of the Company's press releases and public filings with the United States Securities and Exchange Commission ("SEC"), corporate governance documents published on the Company's website, transcripts of Intel conference calls with financial analysts and investors, news reports, financial analyst reports, the public filings in a federal securities class action lawsuit (the "Securities Class Action") captioned *Quille v. Intel Corporation, et al.*, Case No. 3:24-cv-02683 (N.D. Cal.), and a review of other publicly available information concerning Intel and the Individual Defendants (defined below). Plaintiff believes that substantial additional evidentiary support will exist for the allegations after a reasonable opportunity for discovery.

## I. NATURE OF THE ACTION

1. This is a stockholder derivative action brought against certain current and former directors and officers of Intel for their violations of the Federal securities laws, breach of fiduciary duties and other misconduct, which resulted in substantial damage to the Company and its stockholders.

2. Intel is a Delaware corporation designing, manufacturing, and marketing computing and technology products worldwide including semiconductor chips. Historically, Intel spent much of its existence designing, manufacturing, and selling its own chips as an Integrated Device Manufacturer ("IDM").

3. On March 23, 2021, the Company shifted strategy and announced a new initiative called IDM 2.0 (Integrated Device Manufacturing) to expand its semiconductor manufacturing capabilities. The initiative involved, *inter alia*, expanding the use of other companies' "foundries," (semiconductor fabrication plants) to produce some of its products, while simultaneously allowing other companies to produce their chips using Intel's foundry technology and facilities.

4. As part of IDM 2.0, on October 11, 2022, the Company announced a transition to an "Internal Foundry" model ("Intel Foundry"), whereby Intel's product business units would be required to treat the Company's internal foundry operations as if they were an independent third-party entity, from an accounting perspective. This meant other Intel business units would engage in arms-

length transactions for services. As a result, Intel began recognizing revenues generated from both external foundry customers utilizing its foundry services as well as its own product business units, under a new reporting segment called Intel Foundry Services ("IFS"). Additionally, costs related to technology development and product manufacturing, previously allocated directly to Intel product operations, were to be accounted for within IFS's financials.

5. Subsequently, the Company announced that, effective the first quarter of 2024, Intel would implement a new financial reporting system under which Intel Foundry would be responsible for its own reportable profits and losses ("P&Ls"). The Company highlighted this new reporting structure's purported improvements related to cost saving and margin efficiencies.

6. On April 2, 2024, Intel disclosed a retrospective revision of the Company's financial results under the new Intel Foundry model reporting structure, revealing that IFS experienced an operating loss of $7 billion on sales of $18.9 billion in 2023, that Intel Foundry revenue in 2023 was $18.9 billion, down $8.6 billion from 2022, and that IFS reported $2.1 million lower profits.

7. On August 1, 2024, Intel announced its Q2 2024 financial results, reporting a precipitous drop in operating margin both year-over-year and quarter-over-quarter, from a 7.8% deficit in Q2 2023 and an 8.4% deficit in Q1 2024 to a double digit 15.3% deficit in Q2 2024. More specifically, IFS's operating losses spiked from $1.87 billion in Q2 2023 to $2.83 billion in Q2 2024, and 14.3% from Q1 2024 losses of $2.474 million. Adjusted (non-GAAP) EPS of $0.02 per share came in $0.08 below analysts' expectations. Finally, Intel projected weak Q3 2023 revenue guidance of $12.5 - $13.5 billion, well below analysts' consensus estimates, with a non-GAAP projected loss of 0.03% per share. Simultaneously, Intel suspended its dividend and announced plans to lay off 15% of its workforce (15,000 employees), undertaking a $10 billion cost reduction plan.

8. The price of Intel stock reacted sharply, falling from the closing price of $29.05 per share on August 1, 2024 to close at $21.48 per share on August 2, 2024, a decline of 26% on extremely high volume of over 300 million shares traded, the worst daily performance of Intel stock since at least 1985.

9. In the wake of the precipitous stock price drops caused by the revelation of Intel's financial condition, on May 3, 2024, the Securities Class Action was filed against the Company, its CEO Pat Gelsinger ("Gelsinger"), who abruptly resigned on December 1, 2024, and CFO David A. Zinsner ("Zinsner"). As such, the Company is now subject to substantial liability and will be forced to expend substantial sums to defend itself, as well as Gelsinger and Zinsner.

10. As a result of the Individual Defendants' breaches of fiduciary duty and other misconduct, Intel has sustained substantial damages and irreparable injury to its reputation. The Company's directors are neither disinterested nor independent. In the absence of this action, Intel will neither recover its damages nor properly remediate the weaknesses in its internal controls and corporate governance practices and procedures.

## II. JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Sections 14(a) (15 U.S.C. § 78n(a)) of the Securities Exchange Act of 1934 (the "Exchange Act"), SEC Rule 14a-9 (17 C.F.R. § 240.14a-9) promulgated thereunder, and for contribution pursuant to Section 21D of the Exchange Act.

12. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial portion of the transactions and wrongs complained of herein occurred in this District where the Company maintains its headquarters and defendants have received substantial compensation within this District by doing business here and engaging in numerous activities that had an effect in this jurisdiction.

## III. PARTIES

### A. Plaintiff

14. Plaintiff owns 2,000 shares of Intel stock since November 2017 and has continuously held those shares to the present. As such, Plaintiff was a shareholder at the time of the transactions complained of herein.

### B. Nominal Defendant

15. Intel is incorporated under the laws of the State of Delaware. Its principal executive offices are located at 2200 Mission College Boulevard, Santa Clara, California 95054. Intel's common stock trades on the NASDAQ under the ticker symbol "INTC."

### C. Individual Defendants

16. Defendant Gelsinger was the Company's CEO and a member of its Board from February 2021 until his abrupt resignation from the Company on December 1, 2024. He is a named defendant in the Securities Class Action.

17. Since 2021, Gelsinger received the following compensation from the Company:

| YEAR | SALARY | STOCK AWARDS | OPTION AWARDS | NON-EQUITY INCENTIVE PLAN COMPENSATION | ALL OTHER COMPENSATION | TOTAL |
|---|---|---|---|---|---|---|
| 2023 | $1,067,700 | $12,426,800 | N/A | $2,886,000 | $362,900 | $16,855,400 |
| 2022 | $1,302,100 | $8,869,600 | N/A | 945,900 | $497,100 | $11,614,700 |
| 2021 | $1,098,500 | $140,433,000 | $29,108,400 | $5,113,900 | $401,600 | $178,590,400 |

18. Defendant James J. Goetz ("Goetz") is a Company director since November 2019, a member of the Talent and Compensation Committee, and a member of the M&A Committee. For fiscal year 2023, Goetz received the following compensation from the Company:

| FEES EARNED OR PAID IN CASH | STOCK AWARDS | ALL OTHER COMPENSATION | TOTAL |
|---|---|---|---|
| N/A | $374,400 | N/A | $374,400 |

19. Defendant Andrea J. Goldsmith ("Goldsmith") is a Company director since September 2021 and a member of the Audit & Finance Committee. For fiscal year 2023, Goldsmith received the following compensation from the Company:

| FEES EARNED OR PAID IN CASH | STOCK AWARDS | ALL OTHER COMPENSATION | TOTAL |
|---|---|---|---|
| $91,900 | $205,700 | N/A | $297,600 |

20. Defendant Alyssa H. Henry ("Henry") is a Company director since January 2020, a member of the Talent and Compensation Committee, and a member of the M&A Committee. For fiscal year 2023, Henry received the following compensation from the Company:

| FEES EARNED OR PAID IN CASH | STOCK AWARDS | ALL OTHER COMPENSATION | TOTAL |
|---|---|---|---|
| N/A | $372,100 | N/A | $372,100 |

21. Defendant Omar Ishrak ("Ishrak") is a Company director since March 2017, a member of the Audit & Finance Committee, and the Corporate Governance and Nominating Committee, having served as Board Chair from January 2020 until January 2023. For fiscal year 2023, Ishrak received the following compensation from the Company:

| FEES EARNED OR PAID IN CASH | STOCK AWARDS | ALL OTHER COMPENSATION | TOTAL |
|---|---|---|---|
| $132,000 | $205,700 | $2,000 | $339,700 |

22. Defendant Tsu-Jae King Liu ("Liu ") is a Company director since July 2016 and a member of the Corporate Governance and Nominating Committee. For fiscal year 2023, Liu received the following compensation from the Company:

| FEES EARNED OR PAID IN CASH | STOCK AWARDS | ALL OTHER COMPENSATION | TOTAL |
|---|---|---|---|
| $76,900 | $205,700 | N/A | $282,600 |

23. Defendant Risa Lavizzo-Mourey ("Lavizzo-Mourey") is a Company director since March 2018, a member of the Talent and Compensation Committee, and Vice Chair of the Corporate Governance and Nominating Committee. For fiscal year 2023, Lavizzo-Mourey received the following compensation from the Company:

| FEES EARNED OR PAID IN CASH | STOCK AWARDS | ALL OTHER COMPENSATION | TOTAL |
|---|---|---|---|
| $121,900 | $205,700 | N/A | $327,600 |

24. Defendant Barbara G. Novick ("Novick") is a Company director since December 2022, a member of the Audit & Finance Committee, and Chair of the Corporate Governance and Nominating Committee. For fiscal year 2023, Novick received the following compensation from the Company:

| FEES EARNED OR PAID IN CASH | STOCK AWARDS | ALL OTHER COMPENSATION | TOTAL |
|---|---|---|---|
| N/A | $387,600 | $2,000 | $389,600 |

25. Defendant Gregory D. Smith is a Company director since March 2017 and Chair of the Audit & Finance Committee. For fiscal year 2023, Smith received the following compensation from the Company:

| FEES EARNED OR PAID IN CASH | STOCK AWARDS | ALL OTHER COMPENSATION | TOTAL |
|---|---|---|---|
| $111,900 | $205,700 | $2,000 | $319,600 |

26. Defendant Lip-Bu Tan ("Tan") was a Company director from September 2022 and was a member of the M&A Committee until his sudden resignation from the Board on August 19, 2024.[1] Before joining Intel as a director, Tan was a member of the Board's Technical Advisory Committee. In that role, he received $125,000 in a consecutive 12-month period in consideration for services. For fiscal year 2023, Tan received the following compensation from the Company:

| FEES EARNED OR PAID IN CASH | STOCK AWARDS | ALL OTHER COMPENSATION | TOTAL |
|---|---|---|---|
| N/A | $791,500 | $24,462 | $ 1,229,200 |

---

[1] Form 8-K filed with the SEC on August 22, 2024.

27. Defendant Dion J. Weisler ("Weisler") is a Company director since June 2020, a member of the M&A Committee, and Chair of the Talent and Compensation Committee. For fiscal year 2023, Weisler received the following compensation from the Company:

| FEES EARNED OR PAID IN CASH | STOCK AWARDS | ALL OTHER COMPENSATION | TOTAL |
|---|---|---|---|
| N/A | $409,500 | N/A | $409,500 |

28. Defendant Frank D. Yeary ("Yeary) is a Company director since March 2009, Board Chair since January 2023, a member of the Corporate Governance and Nominating Committee, and Chair of the M&A Committee. For fiscal year 2023, Yeary received the following compensation from the Company:

| FEES EARNED OR PAID IN CASH | STOCK AWARDS | ALL OTHER COMPENSATION | TOTAL |
|---|---|---|---|
| $246,400 | $205,700 | N/A | $452,100 |

29. Defendant Zinsner is the Company's CFO since January 2022 and became interim co-CEO on December 1, 2024. He is a named defendant in the Securities Class Action. Since 2022, Zinsner received the following compensation from the Company:

| YEAR | SALARY | STOCK AWARDS | OPTION AWARDS | NON-EQUITY INCENTIVE PLAN COMPENSATION | ALL OTHER COMPENSATION | TOTAL |
|---|---|---|---|---|---|---|
| 2023 | $752,800 | $6,334,400 | N/A | $1,296,000 | $73,700 | $8,456,900 |
| 2022 | $790,600 | $16,560,600 | N/A | $634,700 | $340,700 | $20,326,600 |

30. Defendants Gelsinger, Goetz, Goldsmith, Henry, Ishrak, Liu, Lavizzo-Mourey, Novick, Smith, Tan, Weisler, Yeary, and Zinsner are collectively referred to herein as the "Individual Defendants."

## IV. FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

31. By reason of their positions as officers or directors of Intel and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed and owe Intel and its shareholders, fiduciary obligations of loyalty, good faith, due care, and candor, and were and are required to use their utmost ability to control, manage, and oversee Intel in a fair, just,

honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Intel and its shareholders to benefit all shareholders equally and not in furtherance of their own personal interests or benefit.

32. The Individual Defendants, because of their positions of control and authority as directors and/or officers of Intel, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein.

33. As senior executive officers and directors of a publicly traded company whose common stock was registered with the SEC and traded on Nasdaq, the Individual Defendants also owed a duty to ensure the dissemination of accurate, complete, and truthful information concerning Intel's financial condition, operations, internal controls, and business prospects. In addition, the Individual Defendants had a duty to cause the Company to disclose in its regulatory filings with the SEC all material facts so that the market price of the Company's shares would be based upon accurate information. In order to fulfill these duties, the Individual Defendants were required to exercise reasonable control and supervision over Intel's management, policies, and internal controls.

34. At all relevant times hereto, the Individual Defendants were the agents of each other and of Intel and were always acting within the course and scope of such agency.

35. The Individual Defendants were and are also subject to particularized duties pursuant to specific policies in effect at Intel.

**A. Duties Under Intel's Code Of Conduct**

36. Intel's Code of Conduct applies to Intel directors, officers, and employees, among others.

37. The Code of Conduct requires all Intel personnel to completely, fairly, accurately, and timely reflect the Company's operations and business activities in its books and records, inclusive of "internal management reporting as well as external reporting, such as our public statements, statutory filings, and filings with the U.S. Securities and Exchange Commission. We do not support or condone preparing false records."

38. The Code of Conduct also obligates all Intel personnel to "comply with all applicable laws and obtain any necessary government authorizations."

39. The Code of Conduct obligates full, accurate, transparent, and timely disclosure of material information regarding Intel's "products and our competitors' products."

40. The Code of Conduct also requires all Intel personnel to "follow regulations that govern public communications to investors and the public, including making timely disclosures in the financial reports and documents we submit to the US Securities and Exchange Commission and in other public communications." This obligation specifically includes "communicating with the public in an accurate, reliable, and transparent manner."

**B. Duties Under The Corporate Governance Guidelines**

41. Intel's Amended and Restated Corporate Governance Guidelines (the "Corporate Governance Guidelines") place additional duties on the Board members. Specifically, the Corporate Governance Guidelines state that "the primary responsibility of the directors is to exercise their business judgment to act in a manner they reasonably believe is in the best interests of the company and in a manner consistent with their fiduciary duties." Further, the Corporate Governance Guidelines required the Board to provide "oversight, counseling and direction to the management of the company in the interest and for the benefit of the company's stockholders." Further, Intel expects directors "ask such questions and conduct such investigations as they deem appropriate."

**C. Additional Duties Of Audit & Finance Committee Members**

42. Intel's Audit & Finance Committee Charter states that the purpose of the Audit & Finance Committee "is to represent and assist the Board of Directors in its general oversight of the company's: accounting and financial reporting processes, audits of the financial statements, internal control and audit functions, and compliance with legal and regulatory requirements and ethical standards adopted by the company."

43. In a subsection titled "Independent Auditor Oversight," the Audit & Finance Committee Charter requires its members to review and discuss with management, the independent

auditor, and the Company's chief audit executive: "(a) the adequacy and effectiveness of the company's internal controls (including any significant deficiencies or material weaknesses) and significant changes in internal controls reported to the Committee by the independent auditor or management; (b) the company's internal audit procedures; and (c) the adequacy and effectiveness of the company's controls and procedures, and management reports thereon."

44. In a subsection titled "Financial Reporting Oversight," the Audit & Finance Committee Charter requires its members to discuss with management and the independent auditor: "quarterly earnings press releases, including the interim financial information and Business Outlook included therein, any 'pro forma' or non-GAAP financial measures set forth in the company's quarterly earnings press releases, quarterly financial statements and presentations relating thereto, and [to] review[] the year- end audited financial statements and 'Management's Discussion and Analysis of Financial Condition and Results of Operations,' and to recommend to the Board of Directors whether the audited financial statements should be included in the Annual Report on Form 10-K for the year."

45. In a subsection titled "Enterprise Risk Management Oversight," the Audit & Finance Committee Charter requires its members to review and discuss with management "the company's major financial, product security, and cybersecurity risk exposures and the steps management has taken to monitor and control such exposures, and management's annual enterprise risk management assessment."

## V. SUBSTANTIVE ALLEGATIONS

### A. Background

46. Prior to March 2021, Intel historically designed, manufactured, and sold its own semiconductor chips. On March 23, 2021, however, Intel announced its IDM 2.0 initiative under which Intel would launch a contract chip-making arm, also known as a foundry business. The initiative involved, *inter alia*, the use of external foundries, whereby the Company would utilize other companies' manufacturing facilities to produce some of its chips, as well as the Company's own

foundry business, whereby Intel would allow other companies to produce chips using Intel's technology and facilities. The Company represented that it would now operate through the following reportable segments: Client Computing Group, Data Center and AI, Network and Edge, Mobileye, and IFS.

47. On October 11, 2022, Gelsinger announced the Company's shift to an "internal foundry model, not only for our external customer commitments but also for our Intel product lines." Under the heading "Internal Foundry Model Explained," Gelsinger represented that Intel would "create a foundry accounting model that encompasses manufacturing, technology development and [IFS]." He promised "more transparency into our financial execution and [this] will allow us to fully benchmark and drive ourselves to best-in-class foundry performance." In short, the shift to an "internal foundry model" would include Intel's semiconductor products manufacturing and advanced packaging activities for both internal business units and external customers, thus fully encompassing all of the Company's manufacturing activities. Intel would now take orders from both its own engineers as well as external chip design companies, thereby recognizing revenues generated from both the external foundry customers as well as internally, in addition to technology development and product manufacturing costs traditionally allocated to Intel Products.

48. On June 21, 2023, Intel announced that, effective the first quarter of 2024, it would implement a new financial reporting structure under which IFS would be responsible for its own reportable P&Ls. The Company highlighted that the new reporting structure would result in cost savings, improve margin efficiencies and provide beneficial tailwinds to IFS.

### B. The Individual Defendants Represent That Intel Foundry Is Leading To Higher Returns On Capital

49. On January 25, 2024, Intel announced its fourth quarter and fiscal year 2023 financial results (the "FY2023 Press Release"), which reported the following results by segment:

| Business Unit Revenue and Trends | Q4 2023 | vs. Q4 2022 | 2023 | vs. 2022 |
|---|---|---|---|---|
| Client Computing Group (CCG) | $8.8 billion | up 33% | $29.3 billion | down 8% |
| Data Center and AI (DCAI) | $4.0 billion | down 10% | $15.5 billion | down 20% |
| Network and Edge (NEX) | $1.5 billion | down 24% | $5.8 billion | down 31% |
| Mobileye | $637 million | up 13% | $2.1 billion | up 11% |
| Intel Foundry Services (IFS) | $291 million | up 63% | $952 million | up 103% |

50. In the FY2023 Press Release, Defendant Zinsner stated that Intel "continued to drive operational efficiencies in the fourth quarter, and comfortably achieved our commitment to deliver $3 billion in cost savings in 2023. We expect to unlock further efficiencies in 2024 and beyond as we implement our new internal foundry model, which is designed to drive greater transparency and accountability and higher returns on our owners' capital."

51. That same day, Intel hosted a conference call concerning its financial results. On the call, Gelsinger validated Intel's expected sequential and year-over-year growth in both revenue and EPS for each quarter of fiscal year '24, stating:

> Third-party engagements with IFS continue to validate our progress on process technology. We launched IFS with a long-term view of delivering the world's first system foundry that brings together a secure and sustainable supply chain with the best of Intel and our ecosystem. While our ambitions will not materialize overnight, we made tremendous progress in both Q4 and fiscal year '23 towards our goal of becoming the second largest external foundry by 2030. The rapid adoption of AI by all industries is proving to be a significant tailwind for IFS as high-performance computer, an area where we have considerable wafer and packaging know-how, and IP is now one of the largest, fastest-growing segments of the semiconductor market.
>
> * * *
>
> The momentum in advanced packaging is very strong and is another facet of our foundry strategy, which is clearly benefiting from the surge of interest in AI. With leadership technology and available capacity, our opportunity set continues to grow. In total, across wafer and advanced packaging, ***our lifetime deal value for IFS is now over $10 billion, more than doubling from the $4 billion we provided in our last update.***[2]
>
> * * *
>
> As our new internal foundry model, which is designed to drive greater transparency, accountability and focus on cost begins to take root, we expect to unlock further cost savings and efficiencies in 2024 and beyond. We have officially transitioned to this new operating model on January 1, and we'll report the new segmentation format as

---

[2] All emphasis is added unless otherwise stated.

part of our Q1 earnings. We see incremental efficiencies as we drive to our long-term model of 60% gross and 40% operating margins.

52. On the conference call, Intel represented that the expected operational efficiencies included “>$3B in FY’23, Internal Foundry Model,” as represented in the following chart:




53. On January 26, 2024, Intel filed with the SEC its Annual Report on Form 10-K for fiscal year 2023 (the “2023 Annual Report”) signed by the Individual Defendants. The 2023 Annual Report highlighted the momentum and customer commitments resulting from the implementation of Foundry and that such success was expected to continue in 2024:

> We believe the Open System Foundry model delivers differentiated capabilities to help our customers lead in their industries while bringing stability to the global semiconductor supply chain. ***The momentum and customer commitments we are seeing demonstrate that our strategy and offerings are resonating, and we look to build on this success in 2024 and in future periods.***




54. On March 6, 2024, at the Morgan Stanley Technology, Media & Telecom Conference, Defendant Zinsner represented that IFS provided "a significant tailwind to the earnings of the company":

> We can be profitable, meaningfully profitable in the foundry space, be well underneath what the leading player in the space is, and still drive significant profitability for the overall Intel company because we get the margin stacking benefit in at least the part of the business that we sell into our own fabless portion of our business. So that's really the way I kind of think about it. And I think the last piece of this is kind of restructuring how we manage the business. So, we look at the entire manufacturing and TD footprint as a separate P&L and kind of manage the company accordingly to that. And I think we'll start to see a lot of the efficiencies that we think we can yield and get ourselves more competitive from a cost structure from managing the business in that way.

55. On March 28, 2024, Intel published its Annual Report to Security Holders, containing a prefatory letter from Defendant Gelsinger representing that the Foundry implementation had been successful:

> While still early in our foundry journey, we are seeing significant traction. We began 2023 with a commitment from one Intel 18A foundry customer and ended the year with four. We also achieved five advanced packaging wins, a testament to the advantages of Intel Foundry. To support the growing demand for our foundry offering, we continued to expand our manufacturing capacity and capabilities.

**C. The Truth Emerges**

56. On April 2, 2024, Intel issued a press release with a Retrospective revision to "Management's Discussion and Analysis of Financial Condition and Results of Operations" in the 2023 Annual Report.

57. The press release revealed that IFS's real operating losses were approximately $7 billion on sales of $18.9 billion for fiscal year 2023 versus the operating loss of $500 million on sales

of $1 billion reported in the 2023 Annual Report. Additionally, IFS's internal revenue for fiscal year 2023 was $18.9 billion, down $8.6 billion from 2022.

58. In the press release, the retrospective revision was portrayed as the "recasting" – not restating – of profit and loss results reported for IFS on a standalone basis after manufacturing expenses were removed from the Intel Products segments, *i.e.,* Client Computing Group ("CCG"), Data Center and Artificial Intelligence ("DCAI"), and Networking and Edge ("NEX"). Hence, the Intel Products segments saw operating income improvements while IFS saw a staggering operating loss, as follows:

> We previously announced the implementation of our internal foundry operating model, which took effect in the first quarter of 2024, and creates a foundry relationship between our Intel Products business (collectively CCG, DCAI, and NEX) and our Intel Foundry business.
>
> * * *
>
> Our internal foundry model is a key component of our strategy and is designed to reshape our operational dynamics and drive greater transparency, accountability, and focus on costs and efficiency.

Financial Performance




Operating Segment Revenue Summary

2023 vs. 2022

Revenue was $18.9 billion down $8.6 billion from 2022. Internal revenue was $18.0 billion, down $9.1 billion driven by lower intersegment volume. External revenue was $953 million, up $479 million from 2022, driven by higher packaging revenue.

Segment Operating Loss Summary

We had an operating loss of $7.0 billion, compared to an operating loss of $5.2 billion in 2022.

| (In Millions) | | |
|---|---|---|
| $ | (6,955) | **2023 Operating Loss** |
| | (2,100) | Lower product profit driven by lower internal revenue |
| | (411) | Higher period charges related to excess capacity |
| | (284) | Higher period charges driven by higher inventory reserves taken in 2023 |
| | 481 | Lower period charges primarily driven by a decrease in product ramp costs |
| | 315 | Higher product profit driven by external packaging revenue |
| | 213 | Lower operating expenses driven by various cost-cutting measures |
| $ | (5,169) | **2022 Operating Loss** |

59. On this news, Intel's stock price declined approximately 8.2% per share, or $3.61, from a closing price of $43.94 per share on April 2, 2024, to a closing price of $40.33 per share on April 3, 2024.

60. On April 26, 2024, Intel filed with the SEC its quarterly report on Form 10-Q for the quarter ending March 30, 2024 (the "Q1 2024 10-Q"). The Q1 2024 10-Q reported that IFS declined 10% compared to the same quarter in 2023, to a revenue of $4.4 billion, down $462 million from Q1 2023.

61. On this news, Intel's stock price declined approximately 9.2% per share, or $3.23, from a closing price of $35.11 per share on April 25, 2024, to close at $31.88 per share on April 26, 2024, on unusually heavy trading.

62. On August 1, 2024, in a press release filed with the SEC on Form 8-K, the Company announced its Q2 2024 financial results. Intel reported that operating margin precipitously dropped both year-over-year and quarter-over-quarter, from negative 7.8% in Q2 2023 and negative 8.4% in Q1 2024 to a double digit negative 15.3% in Q2 2024. More specifically, IFS's operating losses spiked from $1.87 billion in Q2 2023 to $2.83 billion in Q2 2024, and 14.3% from Q1 2024 losses of $2.474 million. Adjusted (non-GAAP) EPS of $0.02 per share came in $0.08 below analysts' expectations. Finally, Intel projected weak Q3 2023 guidance of $12.5 - $13.5 billion, well below analysts' consensus, with a non-GAAP projected loss of negative 0.03% per share.

63. Simultaneously, Intel suspended its dividend and announced plans to lay off 15% of its workforce (15,000 employees), undertaking a $10 billion cost reduction plan.

64. The price of Intel stock reacted sharply, falling from the closing price of $29.05 per share on August 1, 2024 to close at $21.48 per share on August 2, 2024, a decline of 26% on extremely high volume of over 300 million shares traded, the worst daily performance of Intel stock since at least 1985.

65. On August 22, 2024, Intel filed with the SEC a Form 8-K disclosing that on August 19, 2024, Defendant Tan informed the Board that he was resigning from the Board, effective immediately. An article published on *Reuters* on August 27, 2024, entitled "Intel board member quit after differences over chipmaker's revival plan," reported that Tan's sudden resignation resulted, according to three anonymous sources familiar with the matter, from Tan's disagreement with CEO

Gelsinger and the other directors over, among other things, the Company's "bloated workforce," and its "lagging artificial intelligence strategy." According to the article, this was after Tan originally joined the Board as part of the plan to restore Intel's place as the leading global chipmaker, and after Tan's responsibilities were expanded in October 2023, when he was authorized to oversee manufacturing operations. The article reported that "Tan grew frustrated by," among other things, "the company's large workforce," and "its approach to contract manufacturing." According to the article, "the Board did not follow Tan's recommendations."

66. On December 2, 2024, Intel announced that Gelsinger retired from the Company effective the day before and was being replaced with Zinsner and Michelle (MJ) Johnston Holthaus, as interim co-chief executive officers while the Board conducts a search for a new CEO. *The Wall Street Journal* reported that Gelsinger's abrupt retirement "in the middle of the multiyear turnaround strategy to build a so-called foundry business manufacturing chips for other companies," after a time in which "Intel's stock has underperformed both the market and rivals," and after the Company's "missteps and missing out on the artificial-intelligence boom [] combined to reshape the fortunes of the company, which reportedly was a takeover target earlier this year," indicated that the Board "want[s] to move in a new direction," being dissatisfied with the failure of the growth strategy "as evidenced by declining revenue and ballooning expenses over the past two years."

### D. The Directors Seek Re-Election To The Intel Board Through A False And Misleading Proxy Statement

67. On March 28, 2024, Intel filed its Proxy Statement with the SEC (the "2024 Proxy") soliciting shareholder approval for the reelection of Gelsinger, Goetz, Goldsmith, Henry, Ishrak, Lavizzo-Mourey, Liu, Novick, Smith, Tan, Weisler, and Yeary to the Board and, on an advisory basis, approval of the executive compensation of certain Intel executive officers.

68. With respect to Intel Foundry, the 2024 Proxy stated:

> Intel delivered a series of notable accomplishments in 2023 that are critical to accelerating its momentum and a sign of the transformation that will continue to create stockholder value in the years ahead. The company's senior leadership team, led by CEO Pat Gelsinger, worked tirelessly in 2023 with a rigorous focus on execution, which included advancing its process and product roadmaps, transitioning to a new

> foundry model to drive cost competitiveness, and implementing a new strategy to bring AI everywhere.

69. The 2024 Proxy stated the following regarding enterprise risk management oversight:

> The full Board has primary responsibility for enterprise risk management oversight. The Board executes its oversight duties through:
>
> - Assigning specific oversight duties to the Board committees based on their areas of expertise and charter defined roles and responsibilities;
> - Period briefing and informational sessions by management on:
>   - The types of risks the company faces
>   - Enterprise risk management, including risk-identification, mitigation and control
>
> For most enterprise risk management issues, such as cybersecurity risks, the Board receives regular and detailed reports from management or the appropriate Board committee regarding its review of the issues. In some cases, such as for risks regarding new technologies and product acceptance, risk oversight is addressed as part of the full Board's regular oversight of strategic planning. The Board and its committees also assess whether management has an appropriate risk management framework to manage risks and whether that framework is operating effectively.

70. However, as later admitted by Intel, and in breach of the individual defendants' fiduciary duties, the true status of Intel's affairs at the time were that: (1) IFS's growth was not indicative of revenue growth reportable under its segment; (2) IFS experienced substantial operating losses in 2023; (3) IFS experienced a decline in product profit driven by lower internal revenue; (4) due to the foregoing, IFS could not be a strong tailwind to Intel's foundry strategy; and (5) the Company failed to maintain adequate internal controls. As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

71. Furthermore, in breach of the individual defendants' fiduciary duties, the 2024 Proxy failed to disclose that, contrary to the 2024 Proxy's descriptions of the Board's risk oversight function and Defendants' adherence to the Code of Conduct, the Board and its committees were not adequately exercising these functions, as Defendants were causing and/or permitting the Company to issue false and misleading statements and were not complying with the Code of Conduct. As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

72. On May 9, 2024, Intel filed a Form 8-K with the SEC announcing that all of the directors were re-elected to the Board and that the advisory vote regarding compensation of certain Intel executive officers was also approved.

## VI. INTEL IS SUED IN A SECURITIES CLASS ACTION LAWSUIT

73. On May 3, 2024, the Securities Class Action was filed on October 30, 2024, the co-lead plaintiffs appointed by the court filed a consolidated class action complaint (the "Consolidated Complaint"). The Consolidated Complaint seeks damages on behalf of a class of all persons and entities that purchased or otherwise acquired Intel common stock between January 25, 2024, and August 1, 2024, inclusive (the "Class Period"). The Consolidated Complaint asserts that the defendants made materially false and misleading statements and omissions concerning the true state of the manufacturing side of Intel's business during the Class Period.

## VII. DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

74. Plaintiff brings this action derivatively in the right and for the benefit of Intel to redress injuries suffered, and to be suffered, as a result of the Individual Defendants' breaches of their fiduciary duties as directors and/or officers of Intel, violations of Section 14(a) of the Exchange Act, as well as other misconduct.

75. Intel is named as a defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

76. Plaintiff is, and has been at all relevant times, a shareholder of Intel.

77. Plaintiff will adequately and fairly represent the interests of Intel in enforcing and prosecuting its rights and has retained competent counsel, experienced in derivative litigation, to enforce and prosecute this action.

78. Demand upon the Board to institute this action against the individual Defendants would be futile and is, therefore, excused. The Intel Board is neither independent nor disinterested.

**A. Demand Upon Defendant Goetz Is Excused**

79. Goetz breached his fiduciary duties to the Company and faces a substantial likelihood of liability by failing to prevent, correct, or inform the Board of the issuance of material misstatements and omissions regarding material deficiencies in the Company's accounting practices, failing to adequately oversee the integrity of the Company's financial disclosures, failing to adequately oversee the Company's compliance with legal and regulatory requirements, failing to adequately oversee the Company's risk assessments and risk management, failing to adequately discuss with management the Company's information prior to public distribution, and failing to adequately oversee the Company's disclosure controls and procedures.

80. Goetz knew that Intel's pronouncements concerning the IFS were false and misleading. Despite this knowledge, Goetz breached his fiduciary duties by making or by failing to prevent or by failing to subsequently correct the dissemination of false and misleading information to the public. As such, Goetz faces a substantial likelihood of liability.

81. Goetz benefited from the violation of Section 14(a) of the Exchange Act pled herein by securing his re-election to the Intel Board through the false and misleading statements and material omissions in the 2024 Proxy.

82. Goetz authorized the 2024 Proxy containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

83. Goetz, as a director and CEO of Intel, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Intel's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

84. As such, Goetz is neither disinterested nor independent. Any demand upon Defendant Goetz is futile and, thus, excused.

**B. Demand Upon Defendant Goldsmith Is Excused**

85. Academic deans increasingly are responsible for fundraising for their institutions. Defendant Goldsmith is the Dean of Engineering and Applied Science at Princeton University. Princeton University's Department of Electrical and Computer Engineering offers juniors the opportunity to conduct research under the mentorship of researchers from Intel, with more programming from Intel provided the following year. Defendant Goldsmith supported the development of this program. There are substantial ties between Intel and Princeton University, in that Intel has contributed more than $1.5 million and they have partnered on software development projects.

86. Goldsmith is a member of the Company's Audit and Finance Committee. Pursuant to its Charter, Goldsmith was specifically charged with the responsibility of assisting the Board in fulfilling its oversight responsibilities related to internal controls over financial reporting and public disclosure requirements, and the Company's compliance with applicable laws and regulations. Goldsmith utterly failed to perform these duties.

87. Goldsmith breached her fiduciary duties to the Company and faces a substantial likelihood of liability by failing to prevent, correct, or inform the Board of the issuance of material misstatements and omissions regarding material deficiencies in the Company's accounting practices, failing to adequately oversee the integrity of the Company's financial disclosures, failing to adequately oversee the Company's compliance with legal and regulatory requirements, failing to adequately oversee the Company's risk assessments and risk management, failing to adequately discuss with management the Company's information prior to public distribution, and failing to adequately oversee the Company's disclosure controls and procedures.

88. Goldsmith knew that Intel's pronouncements concerning the IFS were false and misleading. Despite this knowledge, Goldsmith breached her fiduciary duties by making or by failing to prevent or by failing to subsequently correct the dissemination of false and misleading information to the public. As such, Goldsmith faces a substantial likelihood of liability.

89. Goldsmith benefited from the violation of Section 14(a) of the Exchange Act pled herein by securing her re-election to the Intel Board through the false and misleading statements and material omissions in the 2024 Proxy.

90. Goldsmith authorized the 2024 Proxy containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

91. Goldsmith, as a director and CEO of Intel, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Intel's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

92. As such, Goldsmith is neither disinterested nor independent. Any demand upon Defendant Goldsmith is futile and, thus, excused.

**C. Demand Upon Defendant Henry Is Excused**

93. Henry breached her fiduciary duties to the Company and faces a substantial likelihood of liability by failing to prevent, correct, or inform the Board of the issuance of material misstatements and omissions regarding material deficiencies in the Company's accounting practices, failing to adequately oversee the integrity of the Company's financial disclosures, failing to adequately oversee the Company's compliance with legal and regulatory requirements, failing to adequately oversee the Company's risk assessments and risk management, failing to adequately discuss with management the Company's information prior to public distribution, and failing to adequately oversee the Company's disclosure controls and procedures.

94. Henry knew that Intel's pronouncements concerning the IFS were false and misleading. Despite this knowledge, Henry breached her fiduciary duties by making or by failing to prevent or by failing to subsequently correct the dissemination of false and misleading information to the public. As such, Henry faces a substantial likelihood of liability.

95. Henry benefited from the violation of Section 14(a) of the Exchange Act pled herein by securing her re-election to the Intel Board through the false and misleading statements and material omissions in the 2024 Proxy.

96. Henry authorized the 2024 Proxy containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

97. Henry, as a director and CEO of Intel, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Intel's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

98. As such, Henry is neither disinterested nor independent. Any demand upon Defendant Henry is futile and, thus, excused.

**D. Demand Upon Ishrak Is Excused**

99. Ishrak is a member of the Company's Audit and Finance Committee. Pursuant to its Charter, Ishrak was specifically charged with the responsibility of assisting the Board in fulfilling its oversight responsibilities related to internal controls over financial reporting and public disclosure requirements, and the Company's compliance with applicable laws and regulations. Ishrak utterly failed to perform these duties.

100. Ishrak breached his fiduciary duties to the Company and faces a substantial likelihood of liability by failing to prevent, correct, or inform the Board of the issuance of material misstatements and omissions regarding material deficiencies in the Company's accounting practices, failing to adequately oversee the integrity of the Company's financial disclosures, failing to adequately oversee the Company's compliance with legal and regulatory requirements, failing to adequately oversee the Company's risk assessments and risk management, failing to adequately discuss with management

the Company's information prior to public distribution, and failing to adequately oversee the Company's disclosure controls and procedures.

101. Ishrak knew that Intel's pronouncements concerning the IFS were false and misleading. Despite this knowledge, Ishrak breached his fiduciary duties by making or by failing to prevent or by failing to subsequently correct the dissemination of false and misleading information to the public. As such, Ishrak faces a substantial likelihood of liability.

102. Ishrak benefited from the violation of Section 14(a) of the Exchange Act pled herein by securing his re-election to the Intel Board through the false and misleading statements and material omissions in the 2024 Proxy.

103. Ishrak authorized the 2024 Proxy containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

104. Ishrak, as a director and CEO of Intel, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Intel's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

105. As such, Ishrak is neither disinterested nor independent. Any demand upon Defendant Ishrak is futile and, thus, excused.

**E. Demand Upon Defendant Lavizzo-Mourey Is Excused**

106. Lavizzo-Mourey breached her fiduciary duties to the Company and faces a substantial likelihood of liability by failing to prevent, correct, or inform the Board of the issuance of material misstatements and omissions regarding material deficiencies in the Company's accounting practices, failing to adequately oversee the integrity of the Company's financial disclosures, failing to adequately oversee the Company's compliance with legal and regulatory requirements, failing to adequately oversee the Company's risk assessments and risk management, failing to adequately

discuss with management the Company's information prior to public distribution, and failing to adequately oversee the Company's disclosure controls and procedures.

107. Lavizzo-Mourey knew that Intel's pronouncements concerning the IFS were false and misleading. Despite this knowledge, Lavizzo-Mourey breached her fiduciary duties by making or by failing to prevent or by failing to subsequently correct the dissemination of false and misleading information to the public. As such, she faces a substantial likelihood of liability.

108. Lavizzo-Mourey benefited from the violation of Section 14(a) of the Exchange Act pled herein by securing her re-election to the Intel Board through the false and misleading statements and material omissions in the 2024 Proxy.

109. Lavizzo-Mourey authorized the 2024 Proxy containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

110. Lavizzo-Mourey, as a director and CEO of Intel, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Intel's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

111. As such, Lavizzo-Mourey is neither disinterested nor independent. Any demand upon her is futile and, thus, excused.

**F. Demand Upon Defendant Liu Is Excused**

112. Defendant Liu is the Dean of the College of Engineering at the University of California, Berkeley. In 2011, Intel provided $15 million to host an Intel Science Technology Center on Secure Computing at Berkeley. In 2021, Berkeley launched Intel oneAPI Center of Excellence, a collaboration between Intel and the world's most prestigious universities on open-source coding. Intel provides funding for the projects undertaken by the Intel oneAPI Center of Excellence. Intel

sponsored an AI hackathon in June 2024. Defendant Liu serves on the Berkeley Engineering Advisory Board along with Sandra L. Rivera, EVP and General Manager, Datacenter and AI Group at Intel. The Advisory Board is tasked with developing fellowships, endowing chairs, and creating sustainable funding models.

113. Liu breached her fiduciary duties to the Company and faces a substantial likelihood of liability by failing to prevent, correct, or inform the Board of the issuance of material misstatements and omissions regarding material deficiencies in the Company's accounting practices, failing to adequately oversee the integrity of the Company's financial disclosures, failing to adequately oversee the Company's compliance with legal and regulatory requirements, failing to adequately oversee the Company's risk assessments and risk management, failing to adequately discuss with management the Company's information prior to public distribution, and failing to adequately oversee the Company's disclosure controls and procedures.

114. Liu knew that Intel's pronouncements concerning the IFS were false and misleading. Despite this knowledge, Liu breached her fiduciary duties by making or by failing to prevent or by failing to subsequently correct the dissemination of false and misleading information to the public. As such, Liu faces a substantial likelihood of liability.

115. Liu benefited from the violation of Section 14(a) of the Exchange Act pled herein by securing her re-election to the Intel Board through the false and misleading statements and material omissions in the 2024 Proxy.

116. Liu authorized the 2024 Proxy containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

117. Liu, as a director and CEO of Intel, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Intel's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects; (2)

effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

118. As such, Liu is neither disinterested nor independent. Any demand upon Defendant Liu is futile and, thus, excused.

**G. Demand Upon Defendant Novick Is Excused**

119. Novick is a member of the Company's Audit and Finance Committee. Pursuant to its Charter, Novick was specifically charged with the responsibility of assisting the Board in fulfilling its oversight responsibilities related to internal controls over financial reporting and public disclosure requirements, and the Company's compliance with applicable laws and regulations. Novick utterly failed to perform these duties.

120. Novick breached her fiduciary duties to the Company and faces a substantial likelihood of liability by failing to prevent, correct, or inform the Board of the issuance of material misstatements and omissions regarding material deficiencies in the Company's accounting practices, failing to adequately oversee the integrity of the Company's financial disclosures, failing to adequately oversee the Company's compliance with legal and regulatory requirements, failing to adequately oversee the Company's risk assessments and risk management, failing to adequately discuss with management the Company's information prior to public distribution, and failing to adequately oversee the Company's disclosure controls and procedures.

121. Novick knew that Intel's pronouncements concerning the IFS were false and misleading. Despite this knowledge, Novick breached her fiduciary duties by making or by failing to prevent or by failing to subsequently correct the dissemination of false and misleading information to the public. As such, Novick faces a substantial likelihood of liability.

122. Novick benefited from the violation of Section 14(a) of the Exchange Act pled herein by securing her re-election to the Intel Board through the false and misleading statements and material omissions in the 2024 Proxy.

123. Novick authorized the 2024 Proxy containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

124. Novick, as a director of Intel, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Intel's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

125. As such, Novick is neither disinterested nor independent. Any demand upon Defendant Novick is futile and, thus, excused.

**H. Demand Upon Defendant Smith Is Excused**

126. Smith is a member of the Company's Audit and Finance Committee. Pursuant to its Charter, he was specifically charged with the responsibility of assisting the Board in fulfilling its oversight responsibilities related to internal controls over financial reporting and public disclosure requirements, and the Company's compliance with applicable laws and regulations. Smith utterly failed to perform these duties.

127. Smith breached his fiduciary duties to the Company and faces a substantial likelihood of liability by failing to prevent, correct, or inform the Board of the issuance of material misstatements and omissions regarding material deficiencies in the Company's accounting practices, failing to adequately oversee the integrity of the Company's financial disclosures, failing to adequately oversee the Company's compliance with legal and regulatory requirements, failing to adequately oversee the Company's risk assessments and risk management, failing to adequately discuss with management the Company's information prior to public distribution, and failing to adequately oversee the Company's disclosure controls and procedures.

128. Smith knew that Intel's pronouncements concerning the IFS were false and misleading. Despite this knowledge, Smith breached his fiduciary duties by making or by failing to

prevent or by failing to subsequently correct the dissemination of false and misleading information to the public. As such, Smith faces a substantial likelihood of liability.

129. Smith benefited from the violation of Section 14(a) of the Exchange Act pled herein by securing his re-election to the Intel Board through the false and misleading statements and material omissions in the 2024 Proxy.

130. Smith authorized the 2024 Proxy containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

131. Smith, as a director and CEO of Intel, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Intel's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

132. As such, Smith is neither disinterested nor independent. Any demand upon Defendant Smith is futile and, thus, excused.

**I. Demand Upon Defendant Weisler Is Excused**

133. Weisler breached his fiduciary duties to the Company and faces a substantial likelihood of liability by failing to prevent, correct, or inform the Board of the issuance of material misstatements and omissions regarding material deficiencies in the Company's accounting practices, failing to adequately oversee the integrity of the Company's financial disclosures, failing to adequately oversee the Company's compliance with legal and regulatory requirements, failing to adequately oversee the Company's risk assessments and risk management, failing to adequately discuss with management the Company's information prior to public distribution, and failing to adequately oversee the Company's disclosure controls and procedures.

134. Weisler knew that Intel's pronouncements concerning the IFS were false and misleading. Despite this knowledge, Weisler breached his fiduciary duties by making or by failing to

prevent or by failing to subsequently correct the dissemination of false and misleading information to the public. As such, Weisler faces a substantial likelihood of liability.

135. Weisler benefited from the violation of Section 14(a) of the Exchange Act pled herein by securing his re-election to the Intel Board through the false and misleading statements and material omissions in the 2024 Proxy.

136. Weisler authorized the 2024 Proxy containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

137. Weisler, as a director of Intel, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Intel's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

138. As such, Weisler is neither disinterested nor independent. Any demand upon Defendant Novick is futile and, thus, excused.

**J. Demand Upon Defendant Yeary Is Excused**

139. Yeary breached his fiduciary duties to the Company and faces a substantial likelihood of liability by failing to prevent, correct, or inform the Board of the issuance of material misstatements and omissions regarding material deficiencies in the Company's accounting practices, failing to adequately oversee the integrity of the Company's financial disclosures, failing to adequately oversee the Company's compliance with legal and regulatory requirements, failing to adequately oversee the Company's risk assessments and risk management, failing to adequately discuss with management the Company's information prior to public distribution, and failing to adequately oversee the Company's disclosure controls and procedures.

140. Yeary knew that Intel's pronouncements concerning the IFS were false and misleading. Despite this knowledge, Yeary breached his fiduciary duties by making or by failing to

prevent or by failing to subsequently correct the dissemination of false and misleading information to the public. As such, Yeary faces a substantial likelihood of liability.

141. Yeary benefited from the violation of Section 14(a) of the Exchange Act pled herein by securing his re-election to the Intel Board through the false and misleading statements and material omissions in the 2024 Proxy.

142. Yeary authorized the 2024 Proxy containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

143. Yeary, as a director of Intel, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Intel's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

144. As such, Yeary is neither disinterested nor independent. Any demand upon Defendant Yeary is futile and, thus, excused.

### K. Other Factors Demonstrating That Demand Upon The Individual Defendants Is Excused

145. Intel has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Board has not caused the Company to take action to recover for the Company the damages it has suffered and will continue to suffer thereby.

146. The members of the Board received, and continue to receive, substantial salaries, bonuses, payments, benefits, and other emoluments by virtue of their membership on the Board. They have thus benefited from the wrongs alleged herein and have engaged therein to preserve their positions of control and the perquisites thereof and are incapable of exercising independent objective judgment in deciding whether to bring this action.

147. Publicly traded companies, such as Intel, typically carry director & officer liability insurance from which the Company could potentially recover some or all its losses. However, such

insurance typically contains an "insured vs. insured" disclaimer that will foreclose a recovery from the insurers if the Individual Defendants sue each other to recover Intel's damages. Accordingly, for all the reasons set forth above, a pre-suit demand on the Board is futile and excused.

**COUNT I**
**Against Individual Defendants for**
**Violations of Section 14(a) of the Exchange Act**

148. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

149. Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

150. Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

151. Under the direction and watch of the Defendants, the 2024 Proxy failed to disclose to investors that, contrary to its assertions, the Board and its committees were not adequately exercising their risk oversight functions and were causing, or permitting, the Company to issue false and misleading statements and were not complying with the Code of Conduct.

152. The 2024 Proxy also failed to disclose that: (1) IFS's growth was not indicative of revenue growth reportable under the Intel Foundry segment; (2) IFS experienced substantial operating losses in 2023; (3) IFS experienced a decline in product profit driven by lower internal

revenue; (4) as a result IFS would not be a strong tailwind to Intel's foundry strategy; and (5) the Company failed to maintain adequate internal controls. As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

153. In the exercise of reasonable care, the Defendants knew or should have known that by misrepresenting or failing to disclose the foregoing material facts, the statements contained in the 2024 Proxy were materially false and misleading The 2024 Proxy was also materially misleading because the facts show that the Board and its committees utterly failed to implement controls to effectively oversee conduct risk relating to the Company's core business, operations, and prospects in relation to the conduct alleged herein.

154. The false and misleading elements of the 2024 Proxy led Company shareholders to, inter alia, (1) elect Defendants Gelsinger, Goetz, Goldsmith, Henry, Ishrak, Lavizzo-Mourey, Liu, Novick, Smith, Tan, Weisler, and Yeary to the Board, allowing them to continue to breach their fiduciary duties to the Company; (2) approve, on an advisory basis, the executive compensation of certain Intel executive officers.

155. Intel was damaged as a result of the Individual Defendants' material misrepresentations and omissions in the 2024 Proxy.

156. Plaintiff on behalf of Intel has no adequate remedy at law.

**COUNT II**
**Against Defendants Gelsinger and Zinsner for**
**Contribution For Violations of 21D of the Exchange Act**

157. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

158. The conduct of Defendants Gelsinger and Zinsner, as described herein, has exposed the Company to significant liability under various federal securities laws by their misconduct.

159. Intel is named as a defendant in the pending Securities Class Action that alleges and asserts claims arising under Sections 10(b) and 20(a) of the Exchange Act. The Company is alleged to be liable to private persons, entities and/or classes by virtue of many of the same facts alleged

herein. If Intel is found liable for violating the federal securities laws, the Company's liability will arise in whole or in part from the intentional, knowing, or reckless acts or omissions of Defendants Gelsinger and Zinsner as alleged herein, who have caused the Company to suffer substantial harm through their misconduct. The Company is entitled to contribution and indemnification from these Defendants in connection with all claims that have been, are, or may be asserted against the Company by virtue of their wrongdoing.

160. As officers, directors and otherwise, these defendants had the power or ability to, and did, control or influence, either directly or indirectly, Intel's general affairs, including the content of its public statements, and had the power or ability to directly or indirectly control or influence the specific corporate statements and conduct that violated Sections 10(b) and 20(a) of the Exchange Act.

161. Defendants Gelsinger and Zinsner are liable under § 21D of the Exchange Act, which governs the application of any private right of action for contribution asserted pursuant to the federal securities laws.

162. Defendants Gelsinger and Zinsner have damaged the Company and are liable to the Company for contribution.

**COUNT III**
**Against the Individual Defendants**
**for Breaches of Fiduciary Duty**

163. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

164. By reason of their fiduciary relationships, each of the Individual Defendants owed to the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

165. Each Individual Defendant violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

166. The Individual Defendants breached their fiduciary duties of loyalty and good faith by allowing or permitting false and misleading statements to be disseminated in the Company's SEC filings and other disclosures, and otherwise failing to ensure that adequate internal controls were in place regarding the material issues and deficiencies described above.

167. Each Individual Defendant possessed actual or constructive knowledge that Intel issued materially false and misleading statements, and they failed to timely correct Intel's public statements and representations. Such material misrepresentations were committed knowingly or recklessly.

168. The Individual Defendants possessed actual or constructive knowledge that they caused Intel to fail to maintain adequate internal controls, or acted with reckless disregard for the truth, in that they caused Intel to fail to maintain adequate internal controls, despite such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of Intel's securities.

169. The actions of the Individual Defendants could not have been a good faith exercise of prudent business judgment to protect and promote Intel's corporate interests.

170. As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, Intel sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

171. Plaintiff on behalf of Intel has no adequate remedy at law.

**COUNT IV**
**Against the Individual Defendants for Aiding and Abetting Breach of Fiduciary Duty**

172. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

173. By encouraging and accomplishing the illegal and improper transactions alleged herein and concealing them from the public, the Individual Defendants have each encouraged, facilitated, and advanced their breaches of their fiduciary duties. In so doing, each Individual Defendants aided and abetted, conspired, and schemed with one another to breach their fiduciary duties, waste Intel's corporate assets, and engage in the ultra vires and illegal conduct complained of herein.

174. Plaintiff on behalf of Intel has no adequate remedy at law.

**COUNT V**
**Against the Individual Defendants for Unjust Enrichment**

175. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

176. By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of Intel.

177. Plaintiff, as a shareholder and representative of Intel, seeks restitution from the defendants in the Securities Class Action and seeks an order from this Court disgorging all profits, benefits, and other compensation obtained by the defendants in the Securities Class Action due to their misconduct and breach of their fiduciary and contractual duties.

178. Plaintiff, on behalf of Intel, has no adequate remedy at law.

**COUNT VI**
**Against the Individual Defendants for Waste of Corporate Assets**

179. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

180. The Individual Defendants breached their fiduciary duties by failing to properly supervise and monitor the adequacy of Intel's internal controls, by issuing, causing the issuance of, and/or failing to correct the false and misleading statements identified herein, and by allowing Intel to engage in an illegal, unethical, and improper course of conduct, which was continuous, connected, and ongoing at all relevant times.

181. As a result of the waste of corporate assets, the Individual Defendants are each liable to the Company.

182. Plaintiff, on behalf of Intel, has no adequate remedy at law.

## VIII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment in the Company's favor against all Defendants as follows:

(a) Declaring that Plaintiff may maintain this action on behalf of Intel, and that Plaintiff is an adequate representative of Intel;

(b) Determining and awarding to Intel the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

(c) Directing Intel and the Individual Defendants to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Intel and its shareholders from repeating the damaging events described herein;

(d) Awarding Intel restitution from Individual Defendants, and each of them;

(e) Awarding punitive damages;

(f) Awarding Plaintiff the costs, and disbursements of this action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

(g) Granting such other and further equitable relief as the Court may deem just and proper.

## IX. JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: December 17, 2024

**WEISS LAW**

By: */s/ Joel E. Elkins*

Joel E. Elkins (SBN 256020)
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone: (310) 208-2800
Facsimile: (310) 209-2348
Email: jelkins@weisslawllp.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**WEISS LAW**
David C. Katz
Mark D. Smilow
305 Broadway, 7th Fl.
New York, NY 10007
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: dkatz@weisslawllp.com
msmilow@weisslawllp.com

-and-

Joshua M. Rubin
Jonathan Meer
4 Brighton Rd., Ste. 204
Clifton, NJ 07014
Email: jrubin@weisslawllp.com
jmeer@weisslawllp.com